AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California


FILED
NOV 12 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

| | |
|---|---|
| United States of America<br>v.<br>JESSE MENDOZA<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 1:15-mj-169-SAB<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  June 10, 22; July 15; Oct. 1, 2015  in the county of  Fresno  in the
Eastern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(a)(1)(A) | Unlawfully Dealing Firearms |
| 18 USC 922(j) | Knowingly Possessing a Stolen Firearm |
| 21 USC 841(a)(1) | Distribution of and Possession with Intent to Distribute Controlled Substances (Methamphetamine and Heroin) |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brice McCracken, ATF Special Agent/RAC
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/11/2015

_____
*Judge's signature*

City and state: Fresno, CA

Stanley A. Boone, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

## I. INTRODUCTION AND AGENT BACKGROUND

1. This Affidavit is in support of an arrest warrant for Jesse MENDOZA (hereinafter referred to as "MENDOZA", for violations of Title 18, United States Code, Section 922(a)(1)(A), dealing in firearms without a license and, Title 18, United States Code, 922(j), knowingly possessing stolen firearms; Title 21,United States Code, Sections 841(a)(1), distribution of and possession with intent to distribute controlled substances (methamphetamine and heroin). The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all information known to me and other law enforcement officers involved in the investigation. Rather, this affidavit serves to establish probable cause for the arrest of Jesse MENDOZA for the violations described herein.

2. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed July 28, 2003. I am currently assigned to the Fresno, California Field Office of the ATF as the Resident Agent in Charge. As an ATF Agent, I am responsible for investigating and enforcing federal laws concerning firearms, explosives, arson violations. I am classified and trained as a Federal Law Enforcement Officer, with federal statutory arrest authority. I have completed the Criminal Investigator Training Program, and the ATF National Academy-New Professional Training taught at the Federal Law Enforcement Training Center located at Glynco, Georgia. I received a Bachelor of Science degree in Criminal Justice and Sociology from Gonzaga University in Spokane, Washington.

3. The facts set forth in this Affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents, and from reviewing official reports, documents, and other evidence obtained as result of this investigation.

## II. FACTS ESTABLISHING PROBABLE CAUSE

4. **Summary:** As set forth below, an ATF undercover agent completed controlled purchases of firearms and controlled substances from MENDOZA on multiple dates.

COMPLAINT AFFIDAVIT                                  1

5.  In April, 2015, Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives received information that MENDOZA is a Lewis Street Bulldog gang member and is dealing in firearms and narcotics.

6.  Pursuant to Title 18, United States Code, Section 922(a)(1)(A), an individual is required to have license to engage in the business of dealing firearms. A query of the ATF Licensing Database was conducted with negative results for Jesse MENDOZA.

### A. Controlled Purchase on June 10, 2015 (Methamphetamine)

7.  On June 9, 2015, the UC and MENDOZA[1] exchanged a series of text messages discussing the sale of "dracos" and one (1) "brick," which the UC understood to mean two (2) AK-47 style pistols and one (1) pound of methamphetamine. MENDOZA later sent a text to the UC indicating the guns were not available.

8.  On June 10, 2015, the UC contacted MENDOZA to confirm a meeting for the purchase of approximately one (1) pound of methamphetamine. The UC met with MENDOZA at his residence. Upon entering, MENDOZA went to his bedroom and retrieved a Tupperware container that contained one (1) pound of a white crystalline substance. The UC paid MENDOZA $4,200.00 in ATF funds for the methamphetamine. The white crystalline substance field tested positive for the presence of methamphetamine.

9.  Following the transaction, MENDOZA stated he had AK-47 pistols stored in a storage unit in his aunt's name. MENDOZA then went into his bedroom and retrieved a black plastic bag. MENDOZA removed two containers from the bag and indicated that each container contained one (1) pound of methamphetamine. The UC observed that the containers appeared to be the same size as the container the UC purchased. MENDOZA told the UC that he would be ready if the UC needed to purchase methamphetamine in the next few weeks.

### B. Controlled Purchase on June 22, 2015 (7 Firearms)

10. On June 17, 2015, MENDOZA contacted the UC. MENDOZA told the UC that he had

---

[1] MENDOZA utilized telephone number (559) 519-5351 in contacts with the UC. MENDOZA's telephone is subscribed to "Jesse Mendoza, 4805 E. University Ave, Fresno, California."

COMPLAINT AFFIDAVIT                    2

firearms available for purchase, and subsequently emailed pictures of multiple firearms to the UC. One of the pictures depicted a silver gun case containing multiple firearms. On June 18, 2015, the UC contacted MENDOZA and confirmed the purchase price of $7,000 for the firearms in the pictures and an "AR."

11. On June 22, 2015, the UC contacted MENDOZA to confirm a meeting with MENDOZA for the purchase of seven (7) firearms. The UC arrived at MENDOZA's residence and observed three long guns inside a black blanket on a couch. The UC also observed a .45 caliber handgun with a magazine inserted and a medium size silver gun case that contained several additional handguns. The UC began to inspect the handguns and noticed the .45 caliber was loaded, but did not have a round chambered. MENDOZA told the UC that all the firearms were "hot."[2] MENDOZA explained that he was still waiting for the AR-15 pistol to be delivered.

12. MENDOZA mentioned to the UC that he was in possession of one pound of methamphetamine. MENDOZA stated he recently purchased five pounds of methamphetamine because "the price was too good." The UC paid $3,500.00 in ATF funds to MENDOZA for seven (7) firearms.[3] The UC subsequently exited the residence with the firearms.

13. The firearms were queried through the California Automated Firearms System (AFS). The firearms purchased were 7 of 10 firearms reported stolen during a residential burglary on June 17, 2015.[4]

---

[2] Based on my training and experience, I know that "hot" is a common term used to describe an item that was stolen.

[3] The following firearms were purchased: a Smith and Wesson, Model 38. S&W Special CTG Revolver, SN: 309388; Ruger, Model P345 Pistol, .45 caliber pistol, SN: 664-80644; Ruger, Model Mark II Target, .22 caliber pistol, SN: 211-32751; Taurus, Model Tracker, .357 Magnum Revolver, SN: DR193164; New England Firearms, Model Pardner, 10 Gauge Shotgun, SN: NT225996; Harrington and Richardson, Model Ultra Slug Hunter, 12 Gauge Shotgun, SN: HX351298; Unknown Manufacturer, Model M1938, Mosin Nagant, 7.62 X 54R Rifle, SN: M3800927.

I spoke to ATF Special Agent George Jusino, who has received specialized training in the origin, function and working requirements relative to the documentation of the history of various firearms, and confirmed with him that the firearms referenced above were not manufactured in the State of California and therefore were shipped or transported in interstate or foreign commerce prior to being recovered by ATF.

[4] See Fresno Police Department Report 15-042673.

COMPLAINT AFFIDAVIT     3

**C.   Controlled Purchase on July 15, 2015 (6 Firearms, Heroin)**

14.   On July 7, 2015, the UC contacted MENDOZA. During this conversation, MENDOZA tells the UC that the "china" is available for $2,200 per ounce, and he can get it at a discount from his supplier if the UC purchases four (4) or eight (8) ounces.

15.   On July 14, 2015, MENDOZA sent a text to the UC about two (2) firearms available for purchase, and the UC told MENDOZA that he did want to buy the guns. On July 15, 2015, the UC received an email from MENDOZA including a picture of the firearms. The UC contacted MEDOZA to confirm the purchase of several firearms and one ounce of heroin. The UC arrived at MENDOZA's residence at approximately 12:28 p.m. Inside MENDOZA's residence, UC examined the firearms that were located near the couch. MENDOZA stated all the firearms were stolen and acknowledged the Taurus firearm had an obliterated serial number. MENDOZA said he was waiting for the heroin to be delivered.

16.   At approximately 1:30 p.m., MENDOZA went outside his residence, leaving the UC inside. Shortly thereafter, MENDOZA returned to the residence with approximately one ounce of heroin and provided it to the UC. The UC then paid MENDOZA $6,200.00 for five (5) firearms[5] and approximately one (1) ounce of heroin. MENDOZA also provided the UC a mixed box of ammunition and stated he "got rounds for everything so that you can try it out, even the P9," referring to the AA Arms pistol. A subsequent narcotic field test was conducted on the heroin, with a positive result.

17.   Within thirty minutes of the UC's departure, MENDOZA contacted the UC and stated he had a fully automatic AR-15 style rifle available for $2,800.00, and emailed a picture of the firearm to the UC. The UC agreed to meet MENDOZA at Walgreens, 1016 W. Shaw Ave, Fresno, California, to purchase the firearm. The UC met with MENDOZA at Walgreens. MENDOZA exited the vehicle and

---

[5]The firearms purchased were AA Arms, Inc, Model AP9, 9 mm Pistol, serial number 043859; LLAMA (Gabilondo & CIA), Model IIIA, .380 caliber Pistol, serial number 604099; Taurus, Model PT-25, .25 caliber Pistol, serial number Obliterated; Makarov, Model unknown, .380 caliber pistol, serial number BAC2510; Savage, Model Springfield 197N, .22 caliber rifle, no serial number.

I spoke to ATF Special Agent George Jusino, who has received specialized training in the origin, function and working requirements relative to the documentation of the history of various firearms, and confirmed with him that the firearms referenced above were not manufactured in the State of California and therefore were shipped or transported in interstate or foreign commerce prior to being recovered by ATF.

opened the trunk and allowed the UC to examine the AR-15 style rifle. MENDOZA indicated he was told the firearm was fully automatic and the seller "put it on bulldogs."[6] The UC removed the firearm and placed it in the UC's vehicle. The UC paid MENDOZA $2,800.00 for the AR-15 style rifle.

### D. Controlled Purchase on October 1, 2015 (2 Firearms)

18. On September 24, 2015, MENDOZA contacted the UC and informed the UC that he had access to two (2) MAC style pistols and one had a silencer. The UC asked if MENDOZA could purchase the firearms for $5,000 and if the UC could subsequently pick them up on or about October 1, 2015. The UC also informed MENDOZA he would pay him for this service in addition to the $5,000 for the firearms.

19. On October 1, 2015, at approximately 1330 hours, the UC met with MENDOZA at his apartment. During the meeting, MENDOZA stated "that bag is yours" indicating a bag that was next to the couch on which the UC was seated. The UC opened the bag and inspected its contents. The UC observed an object inside the bag that, based on the UC's training and experience, appeared to be a silencer. The UC also saw two (2) firearms inside the bag. The UC stated to MENDOZA that one of the firearms did not have a serial number. MENDOZA acknowledged by responding "nah". The other SWD firearm still had a serial number and appeared to be newer still in a plastic firearms box.

20. The UC and MENDOZA left the apartment and at approximately 1:38 p.m., the UC and MENDOZA entered the UC's vehicle. The UC secured the aforementioned firearms in the vehicle and then paid MENDOZA $5,100 in pre-recorded USD, representing $5,000 for the firearms[7] and $100 for MENDOZA paying the money up front in order to secure the firearms for the UC.

---

[6] Based on my training and experience, I know that "put it on bulldogs" is slang terminology used to express that one's statement is true. I believe this statement to be the equivalent of swearing an oath.

[7] The firearms purchased were a SWD, Model M11/9, caliber 9mm, machine-gun, SN: N/A SWD, Model M11/9, caliber 9mm, pistol, SN: 94-0011723, and a threaded barrel with suspected silencer attached.

### III. CONCLUSION

21. The above facts set forth probable cause to believe that Jesse MENDOZA is in violation of Title 18, United States Code, Section 922(a)(1)(A), dealing in firearms without a license; Title 18, United States Code, 922(j), knowingly possessing stolen firearms; and Title 21, United States Code, Sections 841(a)(1), distribution of and possession with intent to distribute controlled substances (methamphetamine and heroin). I request that an arrest warrant be issued for Jesse MENDOZA for these violations.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____
Brice P. McCracken
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives, U.S. Department of Justice

Swore to and subscribed before me

This 11th day of November, 2015

_____
Honorable Stanley A. Boone
UNITED STATES MAGISTRATE JUDGE

---

I spoke to ATF Special Agent George Jusino, who has received specialized training in the origin, function and working requirements relative to the documentation of the history of various firearms, and confirmed with him that the firearms purchased on October 1, 2015, were not manufactured in the State of California and therefore were shipped or transported in interstate or foreign commerce prior to being recovered by ATF.

COMPLAINT AFFIDAVIT 6

Reviewed as to form and substance.

/s/Melanie L. Alsworth
MELANIE L. ALSWORTH
Assistant U.S. Attorney

COMPLAINT AFFIDAVIT                                     7